So, beginning with the first appeal, beginning with the appeal on the dismissal issues, there was at least three separate grounds for dismissal, which should have resulted in this bankruptcy case being dismissed. The first of which is that this was the classic two-party dispute. My client had a proximate $600,000 judgment, which was over 95% of the creditor body. The debtor failed to post a bond for stay pending appeal, which would have protected my client during the pendency of the appeal. And instead, the debtor found the Chapter 11 filing fee a more attractive alternative. And the bankruptcy was filed only 11 days after my client had filed a creditor suit against the debtor's insiders, and the debtor's insiders had filed an answer to that suit. Did that continue during the course of the case? I mean, I know that later, recently, you received an order saying that that litigation could go forward, that it isn't impacted by the plan injunction, but was that ever really enjoined by the automatic stay in this case? The debtor's principals took the position that that action was stayed by the bankruptcy case. The state court erred on the side of caution and allowed the case to just simply sort of remain in the status quo. Post-confirmation, when my client started trying to continue the prosecution and on the eve of a trial, the debtor's principals took the position through an ex-party application to the Superior Court that the stay and the stay are injunction preventing that action from continuing. But that was only the latest in several different motions and positions that were taken in the bankruptcy that really evidence that this case was all about protecting the debtor's insiders. That suit had been removed to the bankruptcy court upon the filing and my client had to have that lawsuit remanded back to the state court and relief from stay was granted with respect to the continued prosecution of that lawsuit. Just so I understand, you're not telling us that there's a per se rule requiring dismissal, right? That is correct. So where do we draw the line? I mean, there was a business here that was impacted and your client ought to know better than most why. I mean, occasionally people default on their bonds. There was a bankruptcy purpose to this in the sense that we think with a little bit of risk that we can continue to have a business. And I'm not unsympathetic to what you're saying, but where's the line between those two concepts? I think you have to really look at the totality of the circumstances. Absolutely. Yeah. And the totality of the circumstances here were that during the post petition pre-confirmation time period, there was approximate $500,000 loss to the bankruptcy estate through expenses. Can we unpack that a little bit? Because there's a couple of things going on here and that's what I think troubles me is we've got, okay, a global pandemic, which is impacting a lot of businesses. But on top of that, we've got the fact that the business bona fides are in a state of uncertainty to put it mildly. The legislature of California has basically said we're not doing cash bonds for reasons that made some sense to them. But there's a referendum, there's a light at the end of the So there's a lot more here than just this business is impacted by this litigation, isn't there? That is correct. There's certainly a lot of other issues going on and a lot of moving parts. But at its essence, when you look at the debtors post petition pre-confirmation operations resulting in an approximate $500,000 loss in my client's judgment, when you add in the attorney's fees is about $550,000. My client could have been paid in full if this bankruptcy case was dismissed and not allowed to continue. And when you compare that to the result that will happen in this bankruptcy case where they're going to get a fraction of what they are owed, all in all, this was not the proper use of a bankruptcy case when these actions between these two parties could have been resolved at the state court level. And there was a means and manner to get a stay pending appeal, which would have also protected my client. Excuse me, Mr. Hayes, they didn't have the ability at the time that you got the judgment to pay the judgment and repose the bond. That was one of the reasons why they filed bankruptcy, wasn't it? The debtor may not have had it, but the debtor's principal certainly had the ability. And that's what this case was being operated for. Where in the record is there evidence of the debtor's principal's ability to bond? I'm sorry, your honor, I didn't understand or hear you. But where in the record is there evidence of the debtor's principal's ability to bond? I'm not sure I could point you to it immediately, but the debtor's principal's owned the building out of which the debtor operated. And the debtor's principal's were taking all of these different actions, seeking a stay of that litigation pending the confirmation of the debtor's plan. So Mr. Hayes, are you suggesting then that the violations that you're alleging occurred because of the debtor's principal should be borne by the debtor, because the debtor was trying to reorganize an ongoing business that it thought if it could, the law change might allow it to continue to operate? In other words, if the principal's wrong, then the way to resolve that is to seek relief from the bankruptcy court or to take certain actions against the principal's. But it doesn't mean that the debtor didn't have the right to reorganize, does it? The debtor was basically the principal's and it is in the record that there really were no employees. It was just the debtor's principal's that were operating this business. And there was really only about $20,000 of other creditor claims here. This was all being done with respect to my client's judgment. So if you prevail in your alter ego claims, which you're now going forward with, correct? I believe that's correct. I'm not counsel for my client in the state court. So you haven't lost the ability to, for example, access equity in that building or if it exists? To the extent that my client is successful in obtaining a judgment against the individual principal, then it can pursue enforcement. And one of the principal's assets is the LLC that owns the building. Right. Has your client been paid anything under the plan? Yes, your honor. There was an initial distribution that was made upon confirmation. And then there has been one or more of the quarterly distributions paid pursuant to the plan. Did your client seek a stay? I'm sorry, I didn't hear you. Why didn't your client seek a stay if it wanted to raise these issues on appeal? It becomes a judgment call. And this was a five-year plan with the majority of the payments being made under the plan going to insiders. And as everybody can tell, there's been a whole lot of heated litigation over all of this. And at the end of the day, it becomes a judgment call about how many different appeals and how much continued litigation do you pursue when you're spending as much money as you were spending trying to collect a judgment. And it is part of the record that my client is experiencing significant financial difficulties as a result of this bankruptcy and the non-payment of its judgment and the delay in its ability to collect the judgment. And if you had gotten a stay, you would have gotten a judgment call? That's possible if there was a stay. But in this case, and I understand your honor is addressing potential equitable mootness. And I don't believe that there's equitable mootness here because the majority of the payments that are getting made under this plan are going to insiders and professionals. And the equitable mootness doctrine was not designed to protect insiders and professionals that fully are aware of the issues and the challenges and the oppositions and the appeals that are there. And this is a five-year plan. And we're now basically not even quite one year into that five-year plan. So there still is a lack of substantial confirmation, and there really isn't any effect on third parties that are not before the court in that the insider creditors, this approximate $25,000 of creditor claims, their debts would exist anyhow. And if the case were dismissed, they would have to be paid. Nobody would seek disgorgement from such third party creditors. Can I ask you a question about your $500,000 shortfall? Because doesn't that assume that the forgiven rent, is it forgiven? And doesn't that don't occur at least vis-a-vis your client? And doesn't that assume that the fee reduction doesn't happen a lot? There are a lot of things in the plan that make that number overinflated, don't they? Well, at the time that the court is confronted with ruling on a motion to dismiss for cause, one cause being one ground being the substantial and continuing loss to the I think recognized that that was a problem for them, and they offered some reductions in order to try to minimize that problem. But the loss was the loss, and the loss did show that the debtor's operations really probably weren't sufficient in order to make this plan feasible over the long haul. But Mr. Hayes, that provision also requires proof that there's not a likely rehabilitation that's in prospect, doesn't it? In other words, it's not just a diminution of the estate, it's also combined with a likelihood there was going to be a rehabilitation. And in this case, that's exactly what happened, wasn't it? I think you are correct in that, Your Honor. And I've got about 30 more seconds, and I want to save my time for rebuttal. So if I can switch gears to the confirmation issue that I think is most important. And that is, even if the appeal of dismissal is unsuccessful, the plan should not have been confirmed as fair and equitable when the debtor proposes a plan that doesn't pay the projected disposable income as required under 1191C2B. And instead, what the court requires is something less than the projected disposable income over the plan term of $181,000. Even the subchapter five trustee was requesting and proposing that the appropriate number was, I think it's $243,000 if I'm remembering correctly. And so at the end of the day, if the debtor is proposing this rosy plan that will pay everybody in full over five years, the court should have required that under 1191C2B of those payments should have caused the default. And I'd like to reserve the rest of my time if I may. All right, thank you. All right, Mr. Forsythe. You're muted. I'm sorry, you're muted. We can't hear you. There you go. I apologize. That was like a workday commercial. I apologize. Thank you, Your Honor and all other justices. I appreciate your time and reviewing all the pleadings and preparing for this hearing today. My name is Mark Forsythe representing the appellee Orange County Bail Bonds, Inc. I appreciate the court, the justices focusing on some of the key missing facts out of the appellant's opening brief. You can't talk today about the rural without talking about inflation. I found it shocking the appellant in its opening brief didn't discuss Senate Bill 10, the citizens overturning Senate Bill 10, COVID-19. And one fact that the justices didn't ask Mr. Hayes about was the Sedozi bankruptcy case and the Sedozi residence. Okay. That was the largest asset of this debtor had. The debtor is a service business. If Mr. Hayes' client was going to go foreclose on the debtor's assets without the Sedozi residence, there were no assets. And what the appellant completely ignores is that the Sedozi filed a bankruptcy. It was a very contentious bankruptcy. It was the largest asset in the bankruptcy case. And the debtor through COVID-19 had to go through foreclosing on that property. They had to go through trying to evict the tenant to go sell the property. They had to try to sell the property during COVID-19. How do you ignore that in that process? Now, the appellant wants to complain about the administrative fees. As Justice Smith noted during my fee application to Mr. Hayes, how can you complain about Mr. Forsythe's attorney's fees when there's 310 docket items? Mr. Hayes and his client fought me on every aspect of this case. And then they turn around and complain about my administrative fees. Not only did I take a 20% haircut in my fees, but I surrendered $127,000 to an unsecured creditor that could have gone towards my fees to make this case work. I'm sorry to interrupt you, but I just want to focus a little bit on the decision and what I believe Mr. Hayes is trying to raise with regard to the confirmation order. And so under 1191C, you could prove it under the A provision or the B provision, and the A provision required the payment of projected disposable income. But the B provision, an alternative, would allow a combination of payments and or other property to be transferred. Does that provide a separate basis for the confirmation to be approved in this case if Judge Smith was incorrect in finding that C to A was the applicable provision? Could we apply B under the facts? Yes, Your Honor. And that's the mistake here is that, and I think it's in the record, Judge Smith talks about her calculation that the proceeds from Sedozi, along with the guarantee, which once again is not required. There's no guarantee that the debtor or anyone guarantees the amount of disposable income. It's projected that the debtor would get disposable income. So as Judge Smith noted on the record, the combination of the Sedozi proceeds and the guarantee of $181,000 as what would actually be paid through the plan satisfied C-1-2-B. So let me ask you another question. Did the court ever fix the period for repayment at more than three years? In other words, the way the code reads, it says that it's a three-year period unless the court fixes a longer period, no more than five. Did she ever fix the period? Yes, I believe the confirmation order says five years, Your Honor. Okay. Yes, I think, Your Honor, on the last page, page seven of the confirmation order, docket 310, lines one through five, it says that a debtor will not receive a discharge until all actual disposable income the debtor has paid to the creditors for a period of five years with said payment not to be less than $181,000. So what I'm trying to draw a distinction is this. If the way I understand the way the evidence was presented, you had projected a disposable income for a three-year period that was slightly under $300,000. And on the effective date, you were paying more than $400,000. So on the effective date, you would have satisfied the three-year disposable income requirement as of your effective date payment. And anything else you would have provided would have been in addition to that, would have exceeded the three-year projected disposable income period. Under the five-year period, you had projected something which is not exactly clear to us whether because your future payments are not guaranteed payments, they are payments you're projecting you're going to make. You won't get a discharge if you don't make it, but they're not guaranteed to be made. It's not clear whether those payments could constitute sufficient payments to satisfy 1191C2B. So the question I have is while you proposed a plan that you won't get a discharge, did the court ever enter an order in the case that the plan won't be approved unless you make disposable income payments equal to a five-year period versus a three-year period? That's what I'm trying to determine. Does that appear in the order on the record anywhere? No, it does not. I didn't think so. I think the reference in the order is just as to the discharge, but it does require the payments to be made for five years. If you want a discharge. Or you have to do $181,000 and pay it to global. If you achieve that before the five-year period is over, then you can seek a discharge at that point, as I understood the plan. I think actually, your honor, I think with the $181,000, which isn't required by the code, but another element of our fair and equitable argument here is that we're paying actual five years, but because of the debtor's history during the bankruptcy case of losing money, the subchapter 531 to make sure that there was a minimum amount of money out of this plan, you're paying for five years, but if you don't at least pay $181,000 during that five-year period, then you're not going to get your discharge. That was the kicker beyond what the code required. As you understood the plan, the debtor was required to pay actual disposable income for a five-year period. If they achieved $181,000 before that, then that would satisfy global, but they'd still have to continue to pay any actual disposable income for a five-year period if there was any, and then if they had achieved $181,000 during that five-year period, they would get the discharge at the end of the five-year period. That is the way I interpret the order, and that's the way my client is operating right now. And just if I could throw in real quick, your honor, as a side point, my client has exceeded in every quarter so far its projections. So the debtor is highly performing right now. If by chance this appeal is granted and we go back to the bankruptcy court, Judge Smith is going to confirm the plan because now all this feasibility argument and inability arguments to make money are out the window. Debtor is way outperforming right now. So let me focus a little bit on another point that he was trying to make, which is on the cause for the motion to dismiss. During the course of litigation, the way I read the record, it appears that there was several different hearings where the judge initially did not rule and move the hearing forward, even over the objection of Global, and then got to a certain point where a tentative ruling was prepared and was about to rule, and then Global suggested that that decision not be made and that the matter be moved to confirmation. Is that accurate? Well, your honor, first of all, this was not an issue on appeal. It's an issue that was raised in the reply. We do not have all the transcripts from all those hearings. As you know, you can waive the requirements of section 1112B3 as to the timing of ruling on a motion to dismiss. So I would tell the court without the access to the transcripts of the motions, I'm unable to argue that point. Can I ask you just a quick question about the other bankruptcy? In the quantum of fees that is at issue in his $500,000 number, is any of that fees, is it all fees in this case, or is some of it fees incurred in connection with the companion bankruptcy? With the Sedozi bankruptcy, your honor? Yeah, all the Sedozi bankruptcy fees were part of this bankruptcy case. So those are fees, to be fair to your client, those are fees that somebody would have had to have incurred anyways. Exactly. The argument I made in the bankruptcy court, your honor, in my fee application hearing is that even if Mr. Hayes, we had not filed bankruptcy, would have foreclosed and then taken possession of Adida Trust, the appellant would have had to deal with everything that I had to deal with in the Sedozi bankruptcy case. All right, thank you. My last point, your honor, would be is that the record reflects that Mr. Hayes admitted during the confirmation hearing that the debtor's operations had been improving since SB10 had been overturned by the citizens of California. So that admission was on the record, and I have no other comments other than to reply to any further questions. I don't have anything further. All right, thank you very much. You'll see the rest of your time, and we will hear from Mr. Hayes on rebuttal. Thank you, your honors. Debtor in oral argument says that my client is ignoring the Sedozi proceeds and that's actually not correct at all. We do not ignore that asset. We take the position that that asset should have been used primarily to pay the creditors who were owed money, including my client, and not to have the majority of that money go to pay insiders and professionals at the expense of the actual creditor body. To be fair, let's unpack that. So you got how much of that money? I think to date we've received, my guess is about $140,000, give or take. I don't have the exact number. Okay, so you got $140,000, and you also got, in terms of those fees that were paid, you got the benefit of the fees your client didn't have to advance in connection with getting control of the deed of trust and the underlying real property, correct? That is correct, and we do agree that the fees incurred in getting the Sedozi bankruptcy case resolved so that that property could be foreclosed did in fact provide a benefit, whether it was to, you know, my client taking the laboring or on that work or debtor's counsel taking the work that needed to be done in order to realize the proceeds of that asset. So there's no objection about that. The big fight was over all of the other fees that were being incurred to protect the debtors insiders and to turn this case around so that my client wasn't getting the majority of that net proceeds after you account for the payment of all of that. So real quick in my comments, I think the court did pick a five-year period, and because my client wasn't going to be receiving every all of the projected disposable income but was only going to get actual as long as there was a minimum $181,000 or no discharge, the plan should not have been confirmed as proposed because we weren't receiving what the debtor was projecting its disposable income to be, I'll waive my last four seconds. All right, Judge Lafferty. Thank you. Okay, Judge Gahan. I'm good, thanks. All right, well, thank you for your good arguments. And again, we apologize for the drama that began this, and we will take this under submission and endeavor to get a decision out promptly. Thank you. Thank you very much. Thank you.
judges: TAYLOR, LAFFERTY, GAN